**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **GEORGE H. NASON,** )<br>)<br>  **Plaintiff,** )<br>)<br>)<br>**v.** )<br>)<br>**UNITED STATES ATTORNEY'S** )<br>**OFFICE FOR THE MIDDLE DISTRICT** )<br>**OF TENNESSEE, ET AL.,** )<br>)<br>  **Defendants.** ) | **No. 3:06-0903**<br>**Judge Trauger** |

## MEMORANDUM and ORDER

On February 27, 2007, the Magistrate Judge issued a Report and Recommendation (R&R) recommending that this case be dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) for frivolity and/or for failure to state a claim upon which relief may be granted. (Docket No. 7) The plaintiff has timely filed Objections. (Docket No. 10) Because the Magistrate Judge's recommendation relates to a dispositive matter, this court must make a *de novo* determination as to those portions of the R&R to which specific objection has been made. 28 U.S.C. § 636(b)(1)(C); Rule 72(b), Fed. R. Civ. P.; *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001).

First, the plaintiff objects that the Magistrate Judge has overlooked his breach of contract causes of action by characterizing his entire Complaint as "sounding only under 42 USC 1983. . . simply because this theory of liability is expressly stated in Count 1 of the submitted 15-count complaint." (Docket No. 10, pp. 2-3) The plaintiff is in error that § 1983 is referred to only in Count 1. In fact, the introductory section of the Complaint, which precedes any of the specific counts, begins with: "The instant action is a Civil Complaint pursuant to the provisions of 42 USC

1

1983 for redress of tortious interference with the Plaintiff's constitutionally protected personal and property rights. . . ." (Docket No. 1, p. 1)

The plaintiff asserts that he has alleged a breach of contract cause of action against the three subcontractors named as defendants in Counts 13-15. However, Mr. Nason is a lawyer, and the Magistrate Judge cannot be faulted for failing to construe Counts 13-15 as alleging a breach of contract when, in fact, this lawyer-plaintiff never alleges a breach of contract in those counts.[1] At any rate, the court finds that, given the mandate to liberally construe *pro se* pleadings, the plaintiff has alleged some kind of breach of contract action against the three subcontractor defendants named in Counts 13-15.

Next, the plaintiff objects to the Magistrate Judge's conclusion that his § 1983 claim, because it is asserted against federal actors instead of state actors, arises under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) rather than § 1983. Mr. Nason boldly and erroneously asserts:

> Moreover, had the District Court in its initial reading of the complaint determined the omission of the specific language referencing "Bivens" as a defect in the petition itself, the proper correction of such a minor, technical error would be to direct the Clerk of the court pursuant to Rule 3.1(c)3 to issue a Notice of Defective filing and request that the Plaintiff amend his complaint to correct the filing.

(Docket No. 10, p. 4) Because the R&R proceeded, in any event, to analyze the plaintiff's claims as if they had been properly lodged under *Bivens*, this objection has no merit.

The plaintiff's third objection is to the Magistrate Judge's finding that his claims are barred by the statute of limitations. The plaintiff maintains that he filed this case within one year of

---

[1] What the plaintiff does allege in counts 13-15 of the Complaint is that various subcontractors "intentionally" submitted incorrect invoices for payment from the forfeiture proceeds and that he "suffered severe and grievous damages" as a result of this "intentional conduct." (Docket No. 1, ¶¶ 45-60) This sounds more in tort and hardly amounts to an allegation of breach of contract.

2

discovering the unconstitutional acts about which he complains. More particularly, the plaintiff claims that it was not until he received discovery in his criminal case[2] on September 21, 2005 that he became aware that government agents knew his whereabouts in Brazil during the time period 2001-2003, when government agents were representing to this court in the forfeiture proceeding that they were unaware of his whereabouts and so were unable to give him personal notice of that proceeding. The plaintiff does not claim that the statute of limitations should be equitably tolled; instead, he simply claims that the statute of limitations did not start to run until he became aware of these knowing misrepresentations made by the government in the forfeiture action.

The court has reviewed the allegations of the Complaint in this case, as well as the court's own records in the underlying forfeiture action, *United States of America v. 179 8th Avenue North, et al.*, Case No. 3:02-0727 (M.D. Tenn. Feb. 24, 2004)(Trauger, J.), and the receivership action grounded in 18 U.S.C. § 1345(a)(2), *United States of America v. Nason, et al.*, Case No. 3:01-0455 (M.D. Tenn. Aug. 28, 2003)(Trauger, J.),[3] that preceded the forfeiture action. The Magistrate Judge erred by construing the record in the 2001 receivership action as evidence that the plaintiff had notice of the later-filed forfeiture action. The record of the receivership action does show that a temporary restraining order was served upon Mr. Nason in May of 2001 and that the Receiver met

---

[2] On November 20, 2002, the Grand Jury returned a sealed Indictment against Mr. Nason and a number of other individuals, charging Mr. Nason with conspiracy to defraud mortgage loan companies and financial institutions, mail fraud (9 counts), bank fraud (4 counts), money laundering (13 counts) and false statements to a financial institution (1 count). *United States v. Nason, et al.*, Case No. 3:02cr00198 (M.D. Tenn. June 27, 2006)(Trauger, J.)(Docket Entry No. 1). The Indictment also contained two criminal forfeiture counts. On March 28, 2006, Mr. Nason pled guilty to three counts of the Indictment under a plea agreement with the government, *Id*. (Docket No. 216) and, in June of 2006, he was sentenced to 36 months in prison (which amounted to time served, given his lengthy pretrial detention), *Id.* (Docket No. 292).

[3] This action, filed on May 18, 2001 in this court, was styled *United States of America v. George H. Nason, et al.*, with seven individuals named as individual defendants in addition to Mr. Nason and eight entities named as defendants. Case No. 3:01-0455 (Docket Entry No. 1).

3

with Mr. Nason in person in May of 2001. *Id*. (Docket No. 10). Mr. Nason turned over to the Receiver keys and safe combinations in May, but the receivership was terminated on May 31, 2001, *Id*. (Docket No. 12), and the Second Report of the Receiver states that, as of June 1, 2001, Mr. Nason "will be responsible for conducting the operation of the receivership entity. . . ," *Id*. (Docket No. 11, p. 3). The forfeiture action, Case No. 3:02-0727, was not filed until July 29, 2002 and, in that filing, the government asserted that Mr. Nason had left the Nashville area in June of 2001 and that his whereabouts were unknown. *Id*. (Docket No. 1).

In this action, Mr. Nason asserts that the discovery he received in his criminal case revealed that the government knew he was living in Brazil as early as February of 2002 and even had his telephone number and residential address in Brazil at a time when, in the forfeiture action, the government was representing that it did not know his whereabouts and therefore was serving notice of the forfeiture action upon him at his last known address in Franklin, Tennessee, and by publication.

Although nothing in the receivership action file or the forfeiture action file supports Mr. Nason's theory that the government had knowledge of his specific whereabouts as early as February 2002, these files do support that some representatives of the government had knowledge that Mr. Nason was in Brazil and had knowledge of a street address there associated with him before the actual sale of the 8th Avenue property in August of 2003. On March 28, 2003, Mr. Nason filed, in both the receivership action and the forfeiture action, a "Request for Approval of Deed in Lieu of Payment to Creditor" that was mailed to the court in an express envelope that contained a street

4

address in Brazil.[4] The government's knowledge of this street address is evidenced by the fact that the receivership file contains a "Receipt," signed by Assistant United States Attorney Bob Washko and dated April 16, 2003, that states that he has withdrawn this envelope and that it "will be returned to the Clerk within 60 days." This Receipt was not assigned a docket number and does not appear on the docket sheet for this receivership case. Further, neither the file nor the docket sheet indicates when Mr. Washko returned this envelope to the court file, but it presently is lodged in the court file. It must be noted that, even though the envelope contained a street address in Brazil, all of Mr. Nason's filings in both cases, including the document contained in the express mail envelope, showed his last known address in Franklin under his name at the end of the pleadings, not an address in Brazil.

Even after Mr. Washko removed this envelope from the court file and therefore had a street address in Brazil associated with Mr. Nason, the government continued to send papers in the receivership action and in the forfeiture action to Mr. Nason at his last known address in Franklin and continued to publish notice of the forfeiture, rather than direct filings personally to Mr. Nason anywhere in Brazil. On August 14, 2003, Assistant United States Attorney Bill Cohen, who was handling the forfeiture action for the United States Attorney's Office, filed a Motion to Dismiss in the receivership action. Case No. 3:01-0455 (Docket No. 33). In that motion, Mr. Cohen states that he has attempted to send new notice to Mr. Nason at a "different zip code in Franklin," which appeared in the address given by Mr. Nason at the end of his March 28, 2003 "Request" that was mailed in the express envelope with the Brazil address. Mr. Cohen states that, once again, the mail

---

[4] This document and the express mail envelope were filed only in the receivership action, Case No. 3:01-0455, and were never officially filed in the forfeiture action, despite the fact that both case numbers appeared on the document. It is unclear from the case files why this document was not filed in both cases at the same time.

5

was returned.

None of this complex chronology can be conclusively interpreted as intentional misconduct on the part of any government representative. Mr. Cohen was the Assistant United States Attorney handling the forfeiture action, but it was Mr. Washko (not named as a defendant in this case) who removed the express mail envelope with the Brazil street address from the court file. In his Complaint, Mr. Nason alleges that it was yet a third person (also not named as a defendant in this action), FBI Special Agent Derek McGraw, who stated under oath in the forfeiture Complaint that he did not know Mr. Nason's whereabouts and therefore could not personally serve him with notice of the forfeiture action. Case No. 3:02-0727 (Docket No. 1, ¶16). It is clear from the record that Mr. Cohen was relying upon the Franklin, Tennessee address (with a different zip code), given by Mr. Nason in the pleading mailed in the express envelope checked out by Mr. Washko, when he attempted, once again, to serve Mr. Nason with papers in the forfeiture action.

Even had Mr. Nason sued herein the appropriate defendants, and even if all of his allegations were true, he still has failed to satisfy the first part of the two-part *Bivens* test in order to survive a frivolity review. The Magistrate Judge correctly sets forth in his analysis that a *Bivens* plaintiff must first show that he was deprived of a right secured by the Constitution or laws of the United States. (Docket No. 7, p. 2) Mr. Nason claims that he was deprived of his right to due process because government representatives intentionally misled the court into believing that they were unaware of Mr. Nason's whereabouts and, therefore, were unable to give him notice of the forfeiture action, thus depriving him of the opportunity to file a claim and defend his interest in the properties at issue. But the court records in the receivership action and in the forfeiture action clearly show that Mr. Nason had knowledge of the forfeiture action at least as early as May 9, 2003, when he filed his Request

6

to Consolidate the receivership action and the forfeiture action, a motion that contained the case number of both the receivership action and the forfeiture action. Case No. 3:01-0455 (Docket No. 25); Case No. 3:02-0727 (Docket No. 44). In this document, he states that he "was recently made aware of" the forfeiture action. *Id.* at p. 1. (Again, at the end of this document, below Mr. Nason's name, is his address in Franklin, Tennessee, not in Brazil). At any rate, this filing was made some four months before the court entered its Order Confirming Sale on September 9, 2003. Case No. 3:02-0727 (Docket No. 52). Mr. Nason, therefore, had many months within which to provide his mailing address in Brazil to the court and to the United States Attorney's Office, so that he could receive formal notice of the forfeiture action and have mailed to him in Brazil documents connected to the forfeiture action. He never did so, but continued to mislead the court and the government as to his true whereabouts by signing all pleadings with an address in Franklin, where he apparently had not lived for two years.[5] Therefore, even construing Mr. Nason's allegations in the light most favorable to him, he cannot show that actions of any government representatives deprived him of the opportunity to defend his interest in the properties at issue in the forfeiture action. This *Bivens* claim, therefore, is not appropriately dismissed on statute of limitations grounds but, instead, is properly dismissed for failing to meet the first part of the two-part test under *Bivens*.

---

[5] Mr. Nason, no doubt, knew that criminal charges had either already been filed against him under seal or would be filed against him, once his whereabouts was ascertained. The receivership action was filed with a Complaint alleging that Mr. Nason and a number of other individuals and entities had committed bank fraud violations. Case No. 3:01-0455 (Docket No. 1). It was supported by a detailed affidavit signed by Special Agent Derek S. McGraw of the Federal Bureau of Investigation that sets out a complicated mail fraud and bank fraud scheme perpetrated by Mr. Nason and a number of other individuals and entities. As earlier detailed, Mr. Nason was personally aware of the receivership proceedings and the allegations made therein and probably fled to Brazil in order to avoid prosecution. With the exception of the express mail envelope with the street address in Brazil, Mr. Nason consistently gave his address in the receivership action and in the forfeiture action as Franklin, Tennessee. The prosecuting authorities were not able to locate him in Brazil and have him arrested until November 12, 2003, at which point Mr. Nason contested extradition to this country. Case No. 3:02-0727 ( Docket No. 63).

The plaintiff next complains that the three subcontractors should not be dismissed from this case, as recommended by the Magistrate Judge, because he has alleged contract and tort claims against them that arise out of the forfeiture action and the wrongful sale of his property. This court has already allowed that the plaintiff may, in fact, have a breach of contract claim against the subcontractors, but the Magistrate Judge's analysis that they have in no way become federal actors by submitting claims in a federal forfeiture proceeding is accurate, and the plaintiff's claims against them, whatever they are, are separate and apart from this action brought under Section 1983 (construed as a *Bivens* claim). Therefore, the Magistrate Judge's recommendation that the subcontractors be dismissed from this case is correct and will be accepted.

The plaintiff next complains that the Magistrate Judge's conclusion that the exclusive remedy for the return of the forfeited property to him is under 18 U.S.C. § 983. His argument seems to be that the return of the property would be some sort of additional equitable remedy for him, in addition to the monetary damages that he is claiming. The plaintiff's objection is without merit. The only way for him to seek return of the property is, as the Magistrate Judge stated, a motion filed under 18 U.S.C. § 983; he may not seek to recover the property in a Section 1983 or *Bivens* action. (Docket No. 7 at 12) Therefore, this claim for relief is unavailable to him in this action, and this objection is without merit.

The plaintiff's last objection is to the recommendation that any appeal taken from the dismissal of the case not be certified as taken in good faith. Although the court has modified some of the grounds for the dismissal of this case, the conclusion with regard to the merits of any appeal remains unchanged. This objection is without merit.

For the reasons expressed herein, the plaintiff's Objections to the R&R (Docket No. 10) are

8

**OVERRULED**. The R&R (Docket No. 7) is **ACCEPTED**, as **MODIFIED HEREIN**. For the reasons expressed in the R&R and herein, it is hereby **ORDERED** that this case is **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) for frivolity and/or for failure to state a claim upon which relief may be granted. The plaintiff's pending Motions for Status (Docket Nos. 5 and 6) are **DENIED AS MOOT**. This court certifies that any appeal from the judgment would **NOT** be taken in good faith under 28 U.S.C. § 1915(a)(3).

It is so **ORDERED.**

Enter this 17th day of April 2007.

_____
ALETA A. TRAUGER
United States District Judge